**Slip Op. 13–120**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| INTERNATIONAL CUSTOM PRODUCTS, INC., | |
| Plaintiff, | **Before: Gregory W. Carman, Judge** |
| v. | Court No. 08-00189 |
| UNITED STATES, | |
| Defendant. | |

[*Defendant's motion to dismiss is granted.*]

Gregory H. Teufel and Jeremy L. S. Samek, Eckert Seamans Cherin & Mellott, LLC of Pittsburgh, PA for Plaintiff. With them on the briefs were Simeon M. Kriesberg, Andrew A. Nicely, and Jeffrey C. Lowe, Mayer Brown LLP, of Washington, DC.

Edward F. Kenny, Trial Attorney, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, NY, for Defendant. With him on the briefs were Gregory G. Katsas, Assistant Attorney General, Barbara S. Williams, Attorney-in-Charge, and John J. Todor, Trial Attorney. Of counsel on the briefs was Yelena Slepak, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection.

September 4, 2013

**OPINION & ORDER**

CARMAN, JUDGE: The matter before this Court is a Motion to Dismiss Plaintiff's

Complaint filed by Defendant United States ("Defendant" or "the government"). The

government moves to dismiss Counts 1-8 pursuant to USCIT Rule 12(b)(1) for lack of

subject matter jurisdiction; and to dismiss Count 8 (in the alternative) and Count 9

pursuant to USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the Court grants Defendant's motion.

BACKGROUND

International Custom Products ("ICP" or "Plaintiff") seeks relief from an action taken by U.S. Customs and Border Protection ("Customs" or "Defendant") reclassifying and liquidating 13 entries of Plaintiff's imported product known as "white sauce." Compl. ¶ 2. In 1999, Plaintiff obtained a ruling letter from Customs, NYRL D86228, classifying "white sauce" under HTSUS 2103.90.90 as "sauces and preparations therefor . . . other . . . other . . . other . . . other," with a duty rate of 6.4% *ad valorem*. Id. ¶ 12. In April 2005, Customs issued a "Notice of Action" that 99 entries of "white sauce" were being reclassified and liquidated under HTSUS 0405.20.3000 as "dairy spread," at the rate of $1.996 per kilogram. Id. ¶ 14. This reclassification had the effect of increasing the duties owed on Plaintiff's entries of "white sauce" by approximately 2400%. Id. ¶ 8. Plaintiff asserts that in issuing the Notice of Action, Customs did not follow various statutory and regulatory requirements, and thereby infringed upon several of Plaintiff's rights. See generally Compl. This case is the sixth lawsuit brought by Plaintiff with respect to the classification and liquidation of some or all of 99 entries of "white sauce." Id. ¶ 6.

A brief time line is illuminating. In July of 2007, Plaintiff protested the reclassification and liquidation of a single entry of "white sauce" with request for accelerated disposition. Pl.'s Opp. to Def.'s Mot. to Dismiss ("Pl.'s Mot.") at 6. Thirty days later, after the protest was deemed denied, Plaintiff paid the duties owing on that single entry and commenced Int'l Custom Prods. v. United States, Court No. 07-318 ("ICP IV"), on August 28, 2007. Id. Immediately after commencing that case, Plaintiff filed protest number 1101-07-100220 covering 13 entries of "white sauce" entered between October 2003 and October 2004. Compl ¶¶ 16-17. This second protest was denied on November 26, 2007. Id. ¶ 17. Over the course of the following month, ICP filed eight additional protests covering the balance of its entries of "white sauce" affected by the 2005 Notice of Action. Pl.'s Mot. Ex. 2. Rather than ruling on these eight protests, however, by the end of December 2007, Customs voluntarily placed them all into a "suspended protest status" pending the outcome of ICP IV. Id.; Compl. ¶ 17. Because the protest with respect to the 13 entries had been denied and not suspended, ICP now owes the government approximately $28,000,000.00 in duties on these 13 entries alone. Compl. at 16; Mem. in Support of Def.'s Mot. to Dismiss ("Def.'s Mot.") at 6. The treatment of these 13 entries is contested in this litigation. Compl. ¶ 1.

Plaintiff's Complaint includes nine counts. In Count 1, Plaintiff asserts that

Customs violated the law by effectively revoking NYRL D86228 without first complying with the notice and comment requirements of 19 U.S.C. § 1625(c)(1).  Compl. ¶¶ 30-36. In Count 2, Plaintiff asserts that Customs violated its longstanding treatment of "white sauce" without first complying with the requirements of 19 U.S.C. § 1625(c)(2).  Id. ¶¶ 37-44.  In Count 3, Plaintiff asserts that Customs violated 19 C.F.R. § 177.9 by classifying the 13 entries of "white sauce" in a manner inconsistent with the advance ruling letter. Id. ¶¶ 45-50.  In Count 4, Plaintiff asserts that Customs failed to demonstrate a "compelling reason" for revoking the advance ruling letter.  Id. ¶¶ 51-54.  In Count 5, Plaintiff asserts that in issuing the Notice of Action in 2005, Customs violated the notice and comment requirements of the Administrative Procedure Act ("APA").  Id. ¶¶ 55-58.

In Count 6, Plaintiff asserts that by failing to properly revoke the advance ruling letter, Customs violated ICP's rights under the Due Process Clause of the Fifth Amendment to the Constitution.  Id. ¶¶ 59-65.  In Count 7, Plaintiff asserts that Customs' unlawful reclassification of "white sauce" deprived ICP of its business in violation of ICP's constitutional right to due process of law.  Id. ¶¶ 66-70.  In Count 8, Plaintiff asserts that Customs knew that by denying Plaintiff's protest covering the 13 entries, and by failing to place the entries into "suspended liquidation or suspended protest status" pending the resolution of related litigation, that ICP could not pay the

$28 million required to commence this lawsuit, and thereby acted to "unconstitutionally deprive[] ICP of its right of access to the courts." Id. ¶ 78; see generally id. ¶¶ 71-78. In Count 9, Plaintiff asserts that the jurisdictional prerequisite of 28 U.S.C. § 2637(a) is unconstitutional as applied to ICP in this case, violating ICP's First and Fifth Amendment rights. Id. ¶¶ 79-85.

Defendant moves to dismiss Counts 1 through 8 pursuant to USCIT Rule 12(b)(1) for lack of subject matter jurisdiction. Alternatively and additionally, Defendant moves to dismiss Counts 8 and 9 pursuant to USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted.[1]

## JURISDICTION

Plaintiff asserts the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a), or alternatively pursuant to 28 U.S.C. § 1581(i)(4). Compl. ¶¶ 20-21.

---

[1] Before the Court is also a motion for leave to file a surreply in support of its opposition to the motion to dismiss. Pl.'s Mot. for Leave to File Sur-Reply, ECF No. 64. In brief, Plaintiff requests an opportunity to respond to "factual and legal issues" it claims were raised by the government's reply, and to address the impact of the decision of a related case, Court No. 07-00318. Id. at 3-4. The government opposes. Def.'s Letter of Opp'n, ECF No. 65. The government states that the factual issues Plaintiff seeks to brief are "irrelevant" and "in no way relate to the merits" of the motion to dismiss. Id. at 2. As to the legal issues Plaintiff seeks to raise, the government contends that they "have already been rejected years ago" or do not bear on this case. Id. at 3. The Court agrees with Defendant that further briefing is neither merited nor appropriate; Plaintiff's motion will therefore be denied.

Defendant asserts that because ICP has not complied with the requirements of 28 U.S.C. § 2637(a), this Court does not have jurisdiction under Section 1581(a) to hear Counts 1 through 8. Def.'s Mot. 8. Defendant also asserts that this Court does not have jurisdiction under Section 1581(i)(4) to hear Counts 1 through 8. Id. 11-15. Defendant does not contest the Court's jurisdiction over Count 9 of Plaintiff's Complaint. See generally Def.'s Mot.

**1.      Counts 1 through 8 are Dismissed for Lack of Subject Matter Jurisdiction**

An importer may bring a civil action in the Court of International Trade "contesting the denial of a protest under section 515 of the Tariff Act of 1930 . . . only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced . . . ." 28 U.S.C. § 2637(a) (emphasis added). Plaintiff candidly acknowledges that it has not paid the duties on the 13 entries as required by Section 2637(a), but bids the Court to take jurisdiction over this case nonetheless. Compl. ¶¶ 21-22, 29. The Court cannot oblige. The Court of Appeals for the Federal Circuit ("CAFC") has held that the "conditions upon which the government consents to be sued must be strictly observed and are not subject to implied exceptions." NEC Corp. v. United States, 806 F. 2d 247, 249 (Fed. Cir. 1986). Because 28 U.S.C. § 2637(a) operates as just such a condition upon the waiver of sovereign immunity, it must be strictly construed

in favor of the government.  Cf. AutoAlliance Int'l, Inc. v. United States, 357 F.3d 1290, 1293 (Fed. Cir. 2004) (finding that a related provision, 28 U.S.C. § 2636(a)(1), which requires litigation contesting denied protests to be commenced within 180 days of denial, "operates as a waiver of sovereign immunity [that] this court must strictly construe . . . in favor of the sovereign") (internal quotation and brackets omitted). Plaintiff's failure to pay "all liquidated duties, charges, or exactions . . . related to each entry included in the denied protest" prior to commencing this action means that this Court does not have jurisdiction under 28 U.S.C. § 1581(a) to hear any of Plaintiff's claims.  See 28 U.S.C. § 2637(a); see also Georgetown Steel Corp. v. United States, 801 F.2d 1308, 1312 (Fed. Cir. 1986) ("If a litigant fails to comply with the terms upon which the United States has consented to be sued, the court has no jurisdiction to entertain the suit.") (internal quotation omitted).

Apparently anticipating this result, Plaintiff urges that "[i]f the Court concludes that jurisdiction is lacking under Section 1581(a) because ICP did not prepay the $28 million in duties at the higher rate, then this Court has jurisdiction under 28 U.S.C. § 1581(i)(4) because ICP does not have a remedy under Section 1581(a)."  Compl. ¶ 21. The law does not permit the outcome Plaintiff seeks; the Plaintiff may not do indirectly what it is prohibited to do directly.  The CAFC has previously invalidated attempts to

avoid complying with the prerequisites for jurisdiction under Section 1581(a)–-such as

the prepayment requirement of Section 2637(a)—by invoking jurisdiction under Section

1581(i).

> It is judicially apparent that where a litigant has access to this court under
> traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this
> avenue of approach complying with all the relevant prerequisites thereto.  It
> cannot circumvent the prerequisites of 1581(a) by invoking jurisdiction under
> 1581(i).

Am. Air Parcel Forwarding Co., Ltd. v. United States, 718 F.2d 1546, 1549 (1983)

(citation omitted); see also Int'l Custom Prods. v. United States, 467 F.3d 1324, 1327

(Fed. Cir. 2006) ("Where a litigant has access to the Court of International Trade under

traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this avenue of

approach by complying with all the relevant prerequisites thereto") (internal quotation

marks and brackets omitted) (emphasis added).  Therefore, Plaintiff's failure to comply

with the requirements of 28 U.S.C. § 2637(a) is fatal; Counts 1 through 8 of Plaintiffs

Complaint are dismissed pursuant to USCIT Rule 12(b)(1) for lack of subject matter

jurisdiction.

**2.      The Court has Jurisdiction to hear Plaintiff's Claim in Count 9**

Plaintiff asserts no new claim to jurisdiction for Court 9, simply claiming that the

Court has jurisdiction to hear Count 9 either pursuant to 28 U.S.C. § 1581(a) or pursuant

to 28 U.S.C. § 1581(i)(4).  Compl. ¶¶ 20-21.  The government does not contest the Court's jurisdiction to hear this claim, but moves to dismiss Count 9 pursuant to USCIT Rule 12(b)(5), arguing that the validity and constitutionality of 28 U.S.C. § 2637(a) is well-established.  See Def.'s Mot. 15-28.  It is axiomatic that courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party."  Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006) (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 583 (1999)).  Upon careful consideration, this Court determines that it has subject matter jurisdiction to hear Plaintiff's claim in Count 9.

In the Court's view, Count 9 alleges that the requirement under 28 U.S.C. § 2637(a) that Plaintiff pay duties prior to filing suit has the effect of depriving Plaintiff of its First Amendment right to petition the government via access to the courts, with the consequent effect of depriving Plaintiff of property without due process of law in violation of the Fifth Amendment.  Compl. ¶¶ 79-85.  For relief, Plaintiff requests that Section 2637(a) "be struck down or dispensed with in this case," permitting the Court to take jurisdiction over the substance of Plaintiff's challenge in Counts 1 through 8.  Id. ¶ 85, Request for Judgment and Relief.

Jurisdiction is available under 28 U.S.C. § 1581(a) only to hear civil actions that

"contest the denial of a protest . . . under Section 515 of the Tariff Act of 1930."  28

U.S.C. § 1581(a).  Under Section 1581(a), this Court may only hear "appeals from denials

of valid protests."  Koike Aronson, Inc. v. United States, 165 F.3d 906, 908 (Fed. Cir.

1999).  Because the Plaintiff does not appeal the denial of a valid protest in Count 9,

Section 1581(a) is not an appropriate jurisdictional vehicle for this claim.

Section 1581(i), on the other hand, authorizes the Court of International Trade to

hear a civil action brought against the United States that "arises out of any law of the

United States providing for—(1) revenue from imports . . . ," or the "administration and

enforcement with respect to [revenue from imports]."  28 U.S.C. § 1581(i).  As this court

has previously stated, "[w]hen seeking to challenge a provision over which Customs

has no authority or discretion, a plaintiff need not file a protest and then invoke

jurisdiction under section 1581(a); such a plaintiff may instead rely upon section

1581(i)."  Totes-Isotoner Corp. v. United States, 32 CIT 1172, 1175, 580 F. Supp. 2d 1371,

1375 (2008) (citing Orleans Int'l, Inc. v. United States, 334 F.3d 1375, 1380 (Fed. Cir. 2003)

(holding that the Court of International Trade had section 1581(i) jurisdiction over

Orleans' constitutional challenge of import assessments mandated by the Beef

Promotion and Research Act) and Pat Huval Rest. & Oyster Bar, Inc. v. United States,

32 CIT 232, 243, 547 F. Supp. 2d 1352, 1362-63 (2008) (constitutional challenge allowed

under 1581(i)). In Count 9, Plaintiff brings a constitutional challenge to a statute, 28

U.S.C. § 2637(a), over which Customs has no authority or discretion. For that reason,

and because Count 9 advances a claim against the United States arising out of a law of

the United States providing for revenue from imports or providing for the

administration and enforcement of such revenue, this Court has jurisdiction under 28

U.S.C. § 1581(i) to hear Count 9.

## DISCUSSION

Plaintiff requests unprecedented and startling relief in Count 9. The requirement

to pay all outstanding duties prior to commencing litigation on an import transaction

has been a fixture of the customs laws since the Act of February 26, 1845. See PATRICK

REED, The Role of Federal Courts in U.S. Customs & International Trade Law 59 (1997).

Prior to the implementation of that statute, the same principle of prepayment as the

basis for suit against a collector of customs duties was a fixture of common law since at

least 1774. Id. at 53. Plaintiff has presented no case from the last two and a quarter

centuries where any court has found that the requirement to pay customs duties prior

to litigating some aspect of an import transaction contravened the Constitution. The

Court, likewise, has uncovered no such holding, and is persuaded that none exists.

Defendant is correct that the requirement to pay duties imposed by 28 U.S.C.

§ 2637(a) has consistently been upheld as a valid condition attached to the government's waiver of sovereign immunity in 28 U.S.C. § 1581(a). Def.'s Mot. 20-22 (citing <u>Am. Air Parcel</u>, 718 F.2d 1546; <u>Peking Herbs Trading Co. v. Dep't of the Treasury</u>, 17 CIT 1182 (1985). Plaintiff appears to be correct, though, in pointing out the novelty of the facts of this case. The parties have not informed the Court, and the Court is not aware, of any other case in which the allegedly unlawful reclassification and liquidation of an importer's goods has resulted in an increase in duty liability approaching the magnitude alleged in this case, either in relative (2400%) or absolute ($28 million) terms. Plaintiff's concerns are well founded.

If the prepayment requirement of Section 2637(a) does not violate Plaintiff's constitutional rights in this case, Customs would seem to have an effective license to insulate its future actions from judicial review. There would appear to be no meaningful check on Customs' power to arbitrarily and retroactively reclassify goods of a disfavored importer, with total disregard to any binding ruling letter, under a tariff subheading that would impose a duty liability too great for the importer to pay. As long as Customs' reclassification created an insurmountable financial barrier to the Plaintiff, this court would not have jurisdiction under Section 1581(a) to review even the most egregious agency action. If Plaintiff's allegations are true, the requirement to

prepay $28 million in duties, as a rate advance of 2400% above the rate Plaintiff was promised in a valid ruling letter prior to importation, seems both harsh and unfair.

The Court is not persuaded, however, that the harshness and unfairness of this result rises to the level of unconstitutionality. Defendant argues for the validity of Section 2637(a), pointing out by analogy that "[f]ederal courts also have consistently required payment as a prerequisite to filing suit in tax cases." Def.'s Mot. at 22 n.9 (citing United States v. Clintwood-Elkhorn Mining Co., 553 U.S. 1, 11-12 (2008). While it is true that the Supreme Court has held that 28 U.S.C. § 1346(a)(1) requires "full payment of [any tax] assessment before an income tax refund suit can be maintained in a Federal District Court," this is not the only available method for contesting an income tax assessment. Flora v. United States, 362 U.S. 145, 177 (1960). An aggrieved party may also file suit in United States Tax Court without paying the assessed tax in advance.

When Congress passed the legislation establishing the Tax Court's predecessor, the Board of Tax Appeals, it "thought full payment of the tax assessed was a condition for bringing suit in a District Court; that . . . sometimes caused hardship," and that providing review through the Board would help to "alleviate that hardship." Flora, 362 U.S. at 158. In other words, the Board was created not because taxpayers were

constitutionally entitled to judicial review of tax assessments without prepayment, but rather as a matter of legislative grace in response to hardship. The result—permitting appeal from tax assessments in both U.S. District Court and the Tax Court—is "a system in which there is one tribunal for prepayment litigation and another for post-payment litigation." Flora, 362 U.S. at 163. Certainly a similar measure in the customs context might have the salutary effect of extending legislative grace and easing hardship in this area.

Prior to 1924, the controlling case on prepayment in challenges to both customs duties and taxes was Cheatham v. United States, 92 U.S. 85 (1875). The Court in Cheatham explained that the United States has,

> enacted a system of corrective justice, as well as a system of taxation, in both its customs and internal-revenue branches. That system is intended to be complete. In the customs department it permits appeals from appraisers to other appraisers, and in proper cases to the Secretary of the Treasury; and, if dissatisfied with this highest decision of the executive department of the government, the law permits the party, **on paying the money required**, with a protest embodying the grounds of his objection to the tax, to sue the government through its collector, and test in the courts the validity of the tax.
>
> So also, in the internal-revenue department, the statute . . . allows appeals from the assessor to the commissioner of internal revenue; and, if dissatisfied with his decision, **on paying the tax** the party can sue the collector; and, if the money was wrongfully exacted, the courts will give him relief by a judgment, which the United States pledges herself to pay.
>
> It will be readily conceded, from what we have here stated, that **the**

> **government has the right to prescribe the conditions on which it will subject itself to the judgment of the courts in the collection of its revenues**.
>
> ...
>
> While a free course of remonstrance and appeal is allowed within the departments before the money is finally exacted, **the general government has wisely made payment of the tax claimed, whether of customs or of internal revenue, a condition precedent to a resort to the courts by the party against whom the tax is assessed**. . . . We regard this as a condition on which alone the government consents to litigate the lawfulness of the original tax. It is not a hard condition. Few governments have conceded such a right on any condition. If the compliance with this condition requires the party aggrieved to pay the money, he must do it. . . . It is essential to the honor and orderly conduct of the government that its taxes should be promptly paid . . . and the rule prescribed in this class of cases is neither arbitrary nor unreasonable.

Cheatham, 92 U.S. at 88-89 (emphasis added). Although the statutory schemes for income tax and customs duties have evolved considerably since then, this analysis continues to be cited for its explanation of the role of sovereign immunity in revenue collection. See, e.g., Flora, 362 U.S. at 153-56; see also Johnston v. Comm'r of Internal Revenue, 429 F.2d 804, 806 (6th Cir. 1970) ("While we appreciate that the payment of taxes as a precondition to sue for their return places a burden on the taxpayer, we do not believe that it is such as to deny him the fundamental processes of fairness required by the Fifth Amendment of the United States Constitution.").

In the absence of legislative grace, the state of the law remains so today. The

Court cannot say that 28 U.S.C. § 2637(a) denies Plaintiff "the fundamental process of fairness required by the Fifth Amendment." Johnston, 429 F.2d at 806. Finding no constitutional defect with regard to the application of 28 U.S.C. § 2637(a) in this case, the Court will dismiss Count 9 pursuant to USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted. Judgment will enter accordingly.

CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's motion for leave to file a sur-reply is denied; and it is further

**ORDERED** that Defendant's motion to dismiss Counts 1-8 for lack of jurisdiction is granted; and it is further

**ORDERED** that Defendant's motion to dismiss Count 9 for failure to state a claim upon which relief may be granted is granted.

/s/Gregory W. Carman
Gregory W. Carman, Judge

Dated:    September 4, 2013
          New York, NY