Slip Op. 14-16

UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| NETCHEM, INC.,<br><br>                              Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>                              Defendant. |

Before: Richard W. Goldberg, Senior Judge
Court No. 12-00123

## OPINION

[Defendant's Motion to Dismiss for Lack of Jurisdiction is granted.]

Dated: February 14, 2014

*Charles A. Zdebski*, Eckert Seamans Cherin & Mellott, LLC, of Washington, DC, for plaintiff. With him on the brief was *Candace Lynn Bell*.

*Saul Davis*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, NY, for defendant. With him on the brief were *Stuart F. Delery*, Assistant Attorney General, and *Amy M. Rubin*, Acting Assistant Director, International Trade Field Office.

Goldberg, Senior Judge: This suit challenges Customs and Border Protection's decision to apply a 3.7% *ad valorem* tariff rate to plaintiff Netchem, Inc.'s lanthanum oxide imports. In its complaint, Netchem invoked the court's jurisdiction under 28 U.S.C. § 1581(a) (2006). Defendant the United States (the "Government") now moves to dismiss the lawsuit for lack of jurisdiction under USCIT Rule 12(b)(1).

"Jurisdiction is . . . the authority conferred by Congress to decide a given type of case one way or the other." *Hagans v. Lavine*, 415 U.S. 528, 538 (1974). Without jurisdiction a court

cannot hear a case, no matter how persuasive the plaintiff's substantive arguments. *See Schick v. United States*, 31 CIT 2017, 2020, 533 F. Supp. 2d 1276, 1281 (2007) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)).

These rules compel the court to dismiss Netchem's action in its entirety. The court finds that Netchem's lanthanum oxide shipments or "entries" were untimely liquidated, untimely paid, or protested at the wrong port, depriving the court of authority to adjudicate Netchem's claims.

## FACTUAL BACKGROUND

The facts that follow are uncontested.

Netchem, Inc., a Canadian corporation, imports chemicals into the United States. Compl., ECF No. 5, ¶ 1. Between June and December 2011, Netchem entered forty-three shipments of lanthanum oxide at three U.S. ports: Detroit, Port Huron, and Newark, NJ/New York, NY. *See* Summons, ECF No. 1, Schedule 1. Netchem initially classified these shipments under U.S. Harmonized Tariff Schedule ("HTSUS") subheading 2846.90.2010, which covers "rare-earth oxides except cerium oxide." Compl. ¶ 9−13. Items imported under this subheading enter the country duty free.

Then, in October 2011, U.S. Customs and Border Protection ("CBP") reclassified Netchem's lanthanum oxide shipments under HTSUS 2846.90.8000. Pl.'s Supp. Br., ECF No. 43 ("Pl.'s Second Supp. Br."), Ex. 1 (listing entry number 38 as "Original Tariff Code Correction Entry"). This subheading covers "other" compounds or mixtures of rare-earth metals and levies a 3.7% *ad valorem* tariff rate. Following CBP's reclassification, eighteen of Netchem's shipments fell subject to the 3.7% rate at entry. Twenty-five shipments that were initially

classified as duty free were also charged 3.7% upon liquidation.  The company paid

$1,539,882.97 in duties for the forty-three entries contested in this case.  *See id.*

Netchem protested CBP's classification decision in a document date-stamped March 19,

2012.  Filed at the Port of Buffalo, the document petitioned CBP to reclassify not only the forty-

three entries at issue here, but also thirteen lanthanum oxide entries made at Buffalo during the

same period.  Pl.'s Supp. Br., ECF No. 38 ("Pl.'s First Supp. Br."), App. A.  Of these fifty-six

entries, only twenty-six had been liquidated—with final duty liability fully ascertained—when

Netchem filed the protest document.  Pl.'s Second Supp. Br. Ex. 1; *see* 19 C.F.R. § 159.1 (2013)

(defining liquidation).  The remaining thirty entries, including all thirteen of Netchem's entries to

Buffalo, were liquidated after March 19, 2012.  Pl.'s Second Supp. Br. Ex. 1.

Buffalo's port director wholly refused to rule on Netchem's claims.  The director instead

returned the protest document to Netchem after number-stamping the first page.  *See* Pl.'s First

Supp. Br. App. A; Def.'s Reply Br., ECF No. 33 ("Reply"), 3−4.  According to CBP officer

Elise Morris, the director rejected the document because it included "entries filed at other ports

and not at Buffalo."  Reply Ex. A ¶ 5.  The director would also have sent Netchem "written

advice that [the document] was sent to the wrong port."  *Id.* ¶ 8.

Netchem nevertheless assumed that its petition was "deemed denied" when CBP failed

to decide the document's merits within thirty days.  *See* Compl. ¶ 4; *see also* 19 U.S.C. § 1515(b)

(outlining procedure for accelerated disposition of protests).  Netchem filed this action with the

Court of International Trade on May 4, 2012, listing in the summons its forty-three entries to

Detroit, Port Huron, and New York.  *See* Summons 2, Schedule 1.  As of May 4, Netchem had

paid liquidated duties on eighteen of these forty-three entries. *See* Pl.'s Second Supp. Br. Ex. 1.

The remaining entries were paid sometime between May 9 and July 30, 2012. *See id.*; Reply 12.

Only one entry—UPS 3811755-6 from the Port of Detroit—was protested following

liquidation and fully paid when the case began. *See* Reply 5, 11; Pl.'s Second Supp. Br. Ex. 1.

## STANDARD OF REVIEW

The court reviews the Government's jurisdictional arguments in two steps.

To begin, the court must decide whether the statutory provisions invoked to dismiss

Netchem's entries are indeed jurisdictional. The Supreme Court calls a statutory precondition to

a suit "jurisdictional" only if "the Legislature clearly states that [the] threshold limitation on a

statute's scope shall count as jurisdictional." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 515 (2006).

A statutory limitation is not jurisdictional, however, "when Congress does not rank [the]

statutory limitation . . . as jurisdictional." *Id.* at 516. The court may consider a provision's text,

context, and historical treatment in this inquiry. *See Reed Elsevier, Inc. v. Muchnick*, 559 U.S.

154, 166 (2010); *Ford Motor Co. v. United States*, 635 F.3d 550, 555 (Fed. Cir. 2011); *Baroque

Timber Indus. (Zhongshan) Co. v. United States*, 36 CIT __, __, 865 F. Supp. 2d 1300, 1305

(2012).

The court must then decide whether the facts satisfy these jurisdictional prerequisites. In

its analysis, the court may look beyond the facts alleged in the complaint and consider evidence

extrinsic to the pleadings. *Shoshone Indian Tribe of Wind River Reservation v. United States*,

672 F.3d 1021, 1030 (Fed. Cir. 2012). Only uncontroverted factual allegations are accepted as

true for the purposes of the motion. *Id.* If the court finds these uncontested facts do not establish

jurisdiction over a given claim, the court must dismiss that claim. *See Schick*, 31 CIT at 2020,

533 F. Supp. 2d at 1281.  Plaintiff bears the burden to prove jurisdictional facts by a preponderance of the evidence.  *See McNutt*, 298 U.S. at 189.

The court finally observes, as a legal matter, that statutory provisions granting jurisdiction over denied protests "operate[] as a waiver of [the government's] sovereign immunity."  *AutoAlliance Int'l, Inc. v. United States*, 357 F.3d 1290, 1293 (Fed. Cir. 2004).  As such, jurisdictional conditions "must be strictly observed and are not subject to implied exceptions."  *NEC Corp. v. United States*, 806 F.2d 247, 249 (Fed. Cir. 1986).  The court will thus construe any ambiguity in the statute's jurisdictional language in favor of the Government.  *Int'l Custom Prods., Inc. v. United States*, 37 CIT __, __, 931 F. Supp. 2d 1338, 1341 (2013).

## DISCUSSION

The court now confronts the central question posed in the Government's motion to dismiss:  Does the court have jurisdiction to determine the classification of the forty-three entries listed in Netchem's summons?  The court holds, for all forty-three of the entries, that the answer is "no."  Seventeen of Netchem's entries were not liquidated before being protested, divesting the court of authority to decide them.  Another twenty-five entries were unpaid when Netchem filed this action, again depriving the court of jurisdiction.  And although one entry—UPS 3811755-6—was timely liquidated and paid, the court cannot adjudicate it because it was protested at the wrong port.  The court thus dismisses Netchem's case in its entirety.

### I.      Seventeen of Netchem's Entries Were Not Timely Liquidated

The Government argues the court lacks jurisdiction over seventeen entries that were untimely liquidated.  Def.'s Supp. Resp. Pursuant to Order of Nov. 18, 2013, ECF No. 42 ("Def.'s Second Supp. Br."), 3−4.  Under the statute, importers must lodge protests with CBP

within 180 days following the liquidation of contested entries. 19 U.S.C. § 1514(c)(3)(A) (the "timeliness rule"). An importer must not file a protest before the entries disputed in that protest are liquidated. Here, the Government alleges a number of entries were liquidated after Netchem protested CBP's classification decision, thus violating the statute's timeliness rule.

The court first finds that this rule is jurisdictional. Congress granted the Court exclusive jurisdiction over a number of trade-related cases—including actions "to contest the denial of a protest . . . under section 515 of the Tariff Act of 1930"—in 28 U.S.C. § 1581. 28 U.S.C. § 1581(a). Section 515 of the Tariff Act of 1930, now codified at 19 U.S.C. § 1515, permits CBP to review protests "filed in accordance with" section 19 U.S.C. § 1514. 19 U.S.C. § 1515(a)–(b). Section 1514(c)(3)(A), in turn, says protests "shall be filed with [CBP] within 180 days after but not before . . . [the] date of liquidation." Through this stream of authority— flowing from the jurisdictional wellspring at 28 U.S.C. § 1581(a) to the timeliness rule at 19 U.S.C. § 1514(c)(3)(A)—Congress "clearly stat[ed] that [this] threshold limitation on [the] statute's scope [is] jurisdictional." *Arbaugh*, 546 U.S. at 515; *see also Reed Elsevier*, 559 U.S. at 163−65 (examining text to discern whether statute jurisdictional).

Furthermore, Federal Circuit decisions have long treated the timeliness rule as jurisdictional. *See Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1373 (Fed. Cir. 2002); *United States v. Reliable Chem. Co.*, 66 CCPA 123, 127−28, 605 F.2d 1179, 1183 (1979)[1]; *see also Chrysal USA, Inc. v. United States*, 36 CIT __, __, 853 F. Supp. 2d 1314, 1331 (2012).

---

[1] The Federal Circuit has adopted "the decisions of the Court of Customs and Patent Appeals as binding precedent." *InterDigital Commc'ns, LLC v. Int'l Trade Comm'n*, 718 F.3d 1336, 1342 n.6 (2013) (citing *South Corp. v. United States*, 690 F.2d 1368, 1370 (Fed. Cir. 1982)).

These cases are binding on the court, even if their holdings merit reconsideration in light of subsequent Supreme Court precedents. *See Nat'l Org. of Veterans' Advocates, Inc. v. Sec'y of Veterans Affairs*, 260 F.3d 1365, 1373−74 (Fed. Cir. 2001); *Baroque Timber*, 36 CIT at __, 865 F. Supp. 2d at 1308. Because the Federal Circuit has consistently treated the timeliness rule as jurisdictional in the past, the court treats the provision as jurisdictional now.

This legal finding compels the court to reject seventeen of Netchem's entries. As discussed above, the statute prohibits importers from filing protests before protested entries are liquidated. 19 U.S.C. § 1514(c)(3)(A). Yet according to the parties' supplemental briefing, seventeen of Netchem's entries were liquidated in September and October 2012, long after Netchem submitted its March 19, 2012 protest. Pl.'s Second Supp. Br. Ex. 1; Def.'s Second Supp. Br. 3−4. Because these entries were protested contrary to statute, the court dismisses them for want of jurisdiction.[2]

## II.     Twenty-five of Netchem's Entries Were Not Timely Paid

The Government also argues the court lacks jurisdiction over twenty-five entries that were fully paid after this action began. Def.'s Second Supp. Br. 1−3; Reply 11−13. Under 28 U.S.C. § 2637(a), an importer may challenge a denied protest before this Court "only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced." Recent Federal Circuit precedent treats this provision as jurisdictional. *See Heartland By-Prods., Inc. v. United States*, 568 F.3d 1360, 1363 n.3 (Fed. Cir. 2009) ("To obtain § 1581(a)

---

[2] The entries dismissed for untimely liquidation are UPS 3788706-8, UPS 3805885-9, UPS 3810315-0, UPS 3812457-8, UPS 3813854-5, UPS 3813855-2, UPS 3809343-5, UPS 3809055-5, UPS 3812605-2, UPS 3810934-8, UPS 3814278-6, UPS 3814153-1, UPS 3815354-4, UPS 3829298-7, UPS 3829840-6, UPS 2661163-6, and UPS 2661166-9.

jurisdiction, an importer must pay the duties as to which a protest has been denied."); *see also*

*Epoch Design LLC v. United States*, 36 CIT __, __, 810 F. Supp. 2d 1366, 1371 (2012). This

court follows suit.

Accordingly, the court dismisses the majority of Netchem's entries as untimely paid. The

summons indicates that Netchem filed this case on May 4, 2012. Summons 2. But the

undisputed facts show Netchem finished paying liquidated duties for twenty-five entries well

after that date. *See* Pl.'s Second Supp. Br. Ex. 1 (showing Netchem began paying duties on May

9, 2012); Reply 12 (showing Netchem finished paying duties on July 30, 2012). The court thus

lacks jurisdiction over those entries.[3]

### III.    The Court Lacks Jurisdiction over UPS 3811755-6 Because the Protest Was Not Filed in Accordance with Regulations

And then there was one. As held above, the court lacks jurisdiction over Netchem's

forty-two entries that were either untimely liquidated or untimely paid. That leaves the court to

consider the last entry remaining of the original forty-three: UPS 3811755-6.

The Government contends the court cannot decide Netchem's entries—including UPS

3811755-6—because "there was no validly filed and denied protest contested in this action."

Reply 11. The logic proceeds as follows. Under the statute, protests must "be filed in writing

. . . in accordance with regulations prescribed by the Secretary." 19 U.S.C. § 1514(c)(1) (the

---

[3] The entries dismissed for untimely payment are UPS 3501077-0, UPS 2680556-8, UPS 2681772-0, UPS 2682535-0, UPS 2682626-7, UPS 2582824-9, UPS 3786088-3, UPS 3791943-2, UPS 3791995-2, UPS 3790861-7, UPS 3795621-0, UPS 3799313-0, UPS 3802623-7, UPS 3806977-3, UPS 3799896-4, UPS 3800894-6, UPS 3810904-1, UPS 2675876-7, UPS 2583268-8, UPS 3790432-7, UPS 3793186-6, UPS 3797681-2, UPS 3791866-5, UPS 6176644-3, and UPS 6178034-5.

"statutory filing rule").[4]  The regulations dictate that "[p]rotests shall be filed with the port

director whose decision is protested."  19 C.F.R. § 174.12(d) (the "place-of-filing regulation").

According to the Government, Netchem violated 19 C.F.R. § 174.12(d) by protesting entries

from Detroit, Port Huron, and New York at the Port of Buffalo.  *See* Reply 10−11.  And by

disobeying this place-of-filing regulation, Netchem did not file its protest "in accordance with

regulations prescribed by the Secretary."  *See* 19 U.S.C. § 1514(c)(1).  Hence the court lacks

jurisdiction over the entries in Netchem's improperly filed protest.[5]

## A.  The Statutory Filing Rule Delimits Jurisdiction

The court agrees with the Government and holds that the statutory filing rule is

jurisdictional.  Like the rule mandating that protests be filed following liquidation and not before,

*see* 19 U.S.C. § 1514(c)(3), an unbroken chain of authority links the court's jurisdictional grant

in 28 U.S.C. § 1581(a) to the filing rule in 19 U.S.C. § 1514(c)(1).  The jurisdictional grant

incorporates 19 U.S.C. § 1515 by reference.  Section 1515, in turn, requires importers to lodge

protests in compliance with § 1514, which sets forth the filing rule.  This textual progression

evinces Congress's intent to make the statutory filing rule a jurisdictional prerequisite.[6]

---

[4] The "Secretary" contemplated in the statutory filing rule is "the Secretary of the Treasury or his delegate." 19 U.S.C. § 1401(l).

[5] The Government also argued that there was no valid "protest" in this action.  Reply 8−9.  The Government withdrew this argument, however, when Netchem produced a complete copy of the protest in its first supplemental brief.  Def.'s Withdrawal of § 1514(c)(1) Arg., ECF No. 40; *see also* Pl.'s First Supp. Br. App. A.

[6] The Supreme Court and Federal Circuit have found that certain statutory provisions once thought jurisdictional are not in fact jurisdictional.  The statutory filing rule, though, is unlike these.  For example, in *Reed Elsevier* the Supreme Court considered a rule requiring plaintiffs to register their creative works before bringing copyright suits.  559 U.S. at 164−65.  The Court held the registration rule was not jurisdictional, but rather a nonjurisdictional element of the cause of action.  *Id.* at 161, 166.  The rule at issue in *Reed Elsevier*, however, was not referenced—even obliquely—in the court's jurisdictional grant.  *Id.* at 164−65.  (footnote continued)

The filing rule's context and history also attest to the provision's jurisdictional nature.  In the Customs Courts Act of 1970 (the "1970 Act"), a newly revised jurisdictional grant prohibited the Customs Court from claiming jurisdiction "unless . . . a protest ha[d] been filed, as prescribed by section 514 of the Tariff Act of 1930, as amended."  28 U.S.C. § 1582(c) (1970) (repealed 1980).  Section 514, for its part, mandated that protests be filed "in writing with the appropriate customs officer designated in regulations prescribed by the Secretary."  19 U.S.C. § 1514(b) (1970) (redesignated subsection (c) by Act of July 26, 1979, Pub. L. 96-39, § 1001(b)(3)(C), 93 Stat. 144, 305).  The House Report accompanying the 1970 Act labeled compliance with these rules a jurisdictional must.  H.R. Rep. No. 91-1067, at 16 (1970) ("The requirement in section 1582(c)(1) that the importer shall have exhausted his administrative remedies before the court can take jurisdiction of his case is a basic principle of administrative law and one that has been followed in customs cases.  The provision, therefore, is a restatement of existing law.").

Then, in 1980, Congress passed another Customs Courts Act (the "1980 Act").  Pub. L. No. 96-417, 94 Stat. 1727.  The 1980 Act replaced the jurisdictional grant from the 1970 Act with the language now found in 28 U.S.C. § 1581(a).  *Id.* § 201, 94 Stat. at 1728.  The 1980 Act also retained the requirement that protests be filed in accordance with the Secretary's regulations. 19 U.S.C. § 1514(c)(1) (1982) (amended 1993).  In the accompanying House Report, the Committee on the Judiciary explained that the "new [jurisdictional] subsection *substantially*

---

Nor is the statutory filing rule comparable to nonjurisdictional provisions discussed in other binding precedents.  *See Henderson ex rel. Henderson v. Shinseki*, 131 S. Ct. 1197, 1205 (2011) (finding timely filing requirement in 38 U.S.C. § 7266(a) not addressed in Veterans Court jurisdictional grant); *Ford*, 635 F.3d at 555 (holding certificate-of-origin filing requirement in 19 U.S.C. § 1520(d) not prerequisite to jurisdiction under 28 U.S.C. § 1581(a)).  Unlike the provisions discussed in those cases, the statutory filing rule links cleanly to the jurisdictional language in § 1581(a).

*restates* the courts' authority as presently set forth in 28 U.S.C. § 1582(a)." H.R. Rep. No. 96-1235, at 44 (1980) (emphasis added). The Committee also said that "the filing and denial of a protest *will continue as prerequisites* to the commencement of a civil action brought pursuant to proposed section 1581(a)." *Id.* (emphasis added). In short, Congress upheld compliance with the statutory filing rule as a jurisdictional prerequisite.

Although Congress altered the statute again in 1993, these amendments did not diminish the filing rule's jurisdictional status. *See* North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, § 645, 107 Stat. 2057, 2206−07 (1993). From § 1514(c)(1), Congress deleted the reference to "the appropriate customs officer" and added language about filing protests electronically. *See id.* § 645, 107 Stat. at 2206. Congress retained the rule, however, that requires protests to "be filed in writing . . . in accordance with regulations prescribed by the Secretary." *Id.* And the rule remains intact today. This legislative history—stretching from 1970 to the present—confirms that the statutory filing rule is jurisdictional.

Lastly, the court notes that the statutory filing rule has received jurisdictional recognition in the case law. *Po-Chien, Inc. v. United States*, 3 CIT 17, 18 (1982), *United Flowers, Inc. v. United States*, 69 Cust. Ct. 25, 25−26 (1972), and *United China & Glass Co. v. United States*, 53 Cust. Ct. 68, 70 (1964), all affirm the filing rule's jurisdictional character. *Cf. Koike Aronson, Inc. v. United States*, 165 F.3d 906, 908 (Fed. Cir. 1999) (recognizing jurisdictional nature of protest content rules in 19 U.S.C. § 1514(c)(1)(A)−(D)). Moreover, while *Avecia, Inc. v. United States*, 31 CIT 399, 483 F. Supp. 2d 1251 (2007), appears to hold that the filing rule is not jurisdictional, the case stops short of that conclusion. *Avecia* held only that 19 C.F.R. § 174.12(d), the place-of-filing regulation, is not jurisdictional in and of itself. *Id.* at 401–02,

483 F. Supp. 2d at 1254. *Avecia* never directly questioned whether jurisdiction hinges generally on compliance with 19 U.S.C. § 1514(c)(1). *See id.* (citing § 1514 as provision defining "metes and bounds" of court's subject matter jurisdiction). Consequently, the court finds that the statutory filing rule is a jurisdictional precondition to suing on a denied protest.

**B. Netchem's Protest of UPS 3811755-6 Violated the Statutory Filing Rule**

Netchem's claim to jurisdiction unravels in the wake of this legal finding. Under the regulations, "[p]rotests shall be filed with the port director whose decision is protested." 19 C.F.R. § 174.12(d). Yet the undisputed facts show that Netchem entered UPS 3811755-6 at Detroit but protested the entry in Buffalo. Pl.'s Second Supp. Br. Ex. 1; Pl.'s First Supp. Br. App. A. In brief, the port director who received Netchem's protest and the port director who classified the entry were not the same officer. *See* Westlaw, *Customs Law & Administration* § 5:67 (3d ed. 2013) (explaining that import specialists generally classify merchandise with port director's approval). This violated the plain language of not only the place-of-filing regulation, but also the statutory filing rule, which obliges importers to obey the regulations when filing protests. The court thus lacks jurisdiction over UPS 3811755-6.

Netchem cites *Avecia* to show that jurisdiction does not hinge on compliance with the place-of-filing regulation. Pl.'s Resp. Br., ECF No. 36 ("Resp."), 6. The comparison, however, is inapt. In *Avecia*, plaintiff sent a single protest regarding entries from Philadelphia and other ports to Philadelphia's port director. 31 CIT at 399, 483 F. Supp. 2d at 1252. The director denied the protest in full, including the entries to ports other than Philadelphia. *Avecia, Inc. v. United States*, 30 CIT 1956, 1971, 469 F. Supp. 2d 1269, 1283 (2006). On appeal, the court found that plaintiff's disregard for the place-of-filing regulation in 19 C.F.R. § 174.12(d) did not

defeat jurisdiction. By denying the entire protest—including entries from ports other than Philadelphia—the port director waived "compliance with regulatory filing requirements promulgated by [the] agency." 31 CIT at 403, 483 F. Supp. 2d at 1255. Plaintiff's case could proceed because the agency had temporarily relaxed its place-of-filing rule for entries to the other ports. *Id.* at 399, 483 F. Supp. 2d at 1252−53.

There was no such waiver of the regulations here, however. The protest that Netchem sent to Buffalo included fifty-six entries, only thirteen of which were from Buffalo. Pl.'s First Supp. Br. App. A. When the protest reached Buffalo, the port director number-stamped the first page of the document and returned it to Netchem. *See id.* Nothing in the returned protest suggested the director had decided the merits of Netchem's claims. Furthermore, according to CBP officer Elise Morris, the director sent Netchem written advice explaining that the protest was filed at the wrong port. Reply Ex. A ¶ 8. None of this evidence indicates that Buffalo's port director relaxed the place-of-filing regulation to accommodate entries from other ports. *See* 31 CIT at 399, 483 F. Supp. 2d at 1252−53. Because Netchem failed to lodge its protest "in accordance with regulations," the court lacks jurisdiction over UPS 3811755-6. *See* 19 U.S.C. § 1514(c)(1).

Netchem ventures another argument to prove jurisdiction, but it too fails. Under 19 C.F.R. § 174.13(b), importers may file "[a] single protest . . . with respect to more than one entry at any port." Netchem claims this regulation permits an importer to file a protest covering entries from multiple ports with a single port director, so long as those entries involve the same protesting party, the same categories of merchandise, and a decision common to all entries. Resp. 6. But the Government does not read the regulation that way. It notes that § 174.13

outlines the contents of a protest, not how protests must be filed.  Reply 10 n.7.  It also observes

that § 174.13(b), if read as Netchem argues, would conflict with § 174.12(d):  By definition, an

entry protested at a place other than its port of entry is not reviewed by "the port director whose

decision is protested."  *See* 19 C.F.R. §§ 174.12(d).  Finally, the Government proposes an

alternative interpretation of the regulation that seems reasonable:  "[A]t any port, a single protest

may be filed with multiple entries."  Reply 10 n.7.  Having weighed these arguments, the court

defers to the agency's interpretation of its own regulation.  *See Auer v. Robbins*, 519 U.S. 452,

461 (1997) (holding agency's interpretation of its own regulations controls unless plainly

erroneous); *Reizenstein v. Shinseki*, 583 F.3d 1331, 1335 (Fed. Cir. 2009) (same).

## CONCLUSION

Seventeen of Netchem's entries were liquidated too late.  Another twenty-five entries

were paid too late.  And the one entry remaining that was both timely liquidated and paid was

not protested in accordance with relevant regulations.  These deficiencies deprive the court of

jurisdiction over Netchem's entries.  The Government's motion to dismiss is granted and

judgment will enter accordingly.


                                                                    /s/ Richard W. Goldberg
                                                                    Richard W. Goldberg
                                                                    Senior Judge


Dated:  February 14, 2014
New York, New York