CHAMPION COATED PAPER CO. *v.* UNITED STATES (No. 3885)[1]

United States Court of Customs and Patent Appeals, June 17, 1936

*James R. Ryan, Tompkins & Tompkins (Charles C. Benedict* and *J. Stuart Tompkins* of counsel) for appellant.

*Joseph R. Jackson,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Peter A. Abeles,* special attorney, of counsel), for the United States.

[Oral argument May 19, 1936, by Mr. Tompkins and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

Casein had been imported by the appellant and the duty thereon paid. On various dates between December 21, 1927, and February

[1] T. D. 48411.

21, 1930, twenty drawback entries were filed by appellant under the Tariff Act of 1922, with the Deputy Collector of Customs at Cincinnati, to recover 99 per centum of the duty paid on parts of this casein which had been manufactured. These entries were duly liquidated by the collector at Cleveland, and the money paid to the appellant.

In 1930, the Special Agency Service of the Treasury Department, at the instance of the Secretary of the Treasury, reinvestigated certain drawback rates. This investigation required about a year and a half. Following this, the collector at Cleveland was instructed by the Commissioner of Customs to determine the amount due from the appellant as a refund of the drawback and claimed by the collector to have been illegally paid. On February 5, 1932, the collector demanded from the appellant a repayment of $12,129.83, as a refund of drawback.

On July 29, 1933, again acting in pursuance of directions from the Commissioner of Customs, the collector reliquidated the drawback entries and on August 4, 1933, demanded a refund of drawback, as before, from appellant. The appellant made no refund in either instance.

An examination of the drawback entries herein involved shows that the Comptroller of Customs at Philadelphia verified the original liquidation of the entries on May 9, 1928, as appears by his stamp upon the entries. The first purported reliquidation of the entries by the collector was made, as stamped thereon, on February 5, 1932. This reliquidation does not appear to have been verified by the comptroller. The entries bear the mark "Re-Reliquidated July 29 1933 U. S. Custom House Cleveland, Ohio." The entries also bear the stamp "Comptroller of Customs Re-Verified July 19 1933 Philadelphia, Pa."

Section 523 of the Tariff Act of 1922 is, in part, as follows:

SEC. 523. * * * Comptrollers of Customs shall verify all assessments of duties and allowances of drawbacks made by collectors in connection with the liquidation thereof. In cases of disagreement between a collector and a comptroller of customs, the latter shall report the facts to the Secretary of the Treasury for instructions. * * *

Inasmuch as the purported reliquidation of February 5, 1932, does not seem to have been verified by the comptroller, we must assume that the first reliquidation was not complete and that the later action of July 29, 1933, was thought necessary in order to comply with all legal requirements and to complete a valid reliquidation.

On August 9, 1933, the appellant filed its protest against the "so-called re-reliquidations" of July 29, 1933. The protest, omitting the list of entries, dates of filing, and dates of liquidation, is as follows:

We respectfully protest against your so-called re-reliquidations (July 29, 1933) of the following drawback entries: * * *

We further protest against your decision of August 4, 1933, demanding $12,129.83 as a refund of drawback paid to the undersigned and covered by the entries set forth in the above schedule.

We claim that your original liquidations, by virtue of the statute of limitations contained in Section 514, Tariff Act of 1922, in the absence of any protest, became final and conclusive upon all parties.

We further claim that, pursuant to the provisions of Section 521, Tariff Act of 1922, you are, in the absence of any protest having been filed against the original liquidations, precluded from reliquidating the entry for any cause, except fraud, after the expiration of one year from the date of such entry and that, if you believe there is fraud, you may not reliquidate an entry after the expiration of two years from the date of the entry. More than two years having elapsed since the date of the entries herein, your so-called re-reliquidations are null and void ab initio.

\*          \*          \*          \*          \*          \*          \*

We further claim that your decision demanding $12,129.83, having been predicated upon void liquidations, is likewise null and void.

We further claim that the original liquidations were correct, legal and valid in all respects and that they have, by operation of the statute of limitations, become final and conclusive.

We further claim that there having been no reliquidations, there can be no so-called re-reliquidations.

The collector's report, also omitting the list of entries and other immaterial portions, was as follows:

This protest is made against the re-reliquidation of the drawback entries listed above and the demand for repayment of the drawback illegally claimed on casein. The entries were reliquidated February 5, 1932, in accordance with instructions from the Commissioner of Customs in a letter dated February 1, 1932. On further instructions from the Commissioner in a letter dated July 11, 1933, the entries were re-reliquidated July 29, 1933. Demand had been made for the repayment of the amount found due but has not been paid.

On the trial before the United States Customs Court but one witness was called and examined, and his testimony was on matters not material here. On the trial, Government counsel conceded that no fraud was claimed in this proceeding. The appellant's counsel contended that the so-called reliquidation of February 5, 1932, and re-reliquidation of July 29, 1933, were without authority of law and contended that, under the provisions of section 521 of the Tariff Act of 1922, any reliquidation of these drawback entries was barred by the limitation of one year claimed to be fixed by said section, no fraud having been charged.

The Government argued in the trial court, and here that said section 521 does not apply to drawback entries, but only to consumption entries. Government counsel also contended that, under the provisions of section 514 of said tariff act, the appellant must refund the money received from the collector on the drawback entries before it could protest, and, not having done so, the protest should be dismissed. A motion to that effect was made by Government counsel.

As to this claim, appellant's counsel took the position that the language of said section 514 requiring a payment before protest did not apply to drawback entries, but only to consumption entries.

A further motion was made by Government counsel to dismiss the protest on the ground that the burden rested upon the appellant to prove that the collector's decisions on reliquidation and re-reliquidation were improperly made; in other words, to prove that the imported goods were used in the manufacture of goods to be exported, and that it had failed to prove the same.

The two motions of the Government were taken under advisement.

In the argument before the trial court, another element entered the case, for we find, from a portion of the argument of appellant's counsel, quoted in the decision of the court, that counsel was arguing that under said section 514, the court had jurisdiction to adjudicate not only the so-called re-reliquidations, but the decision of the collector ordering the same, as well. On the other hand, the Government was there insisting that the court had no jurisdiction under said section 514.

In response to these arguments, the trial court held that the collector's decision to order a drawback refund, or his reliquidation of a drawback entry was not such a decision as would sustain a protest, in view of the provisions of said section 514. The court also held that it was incumbent upon the appellant to refund the money demanded by the collector, and that, until it had made such refund, it could not protest under said section 514. The underlying theory upon which this ruling is made is expressed in the following words:

The importer is here in a case wherein he has not, so far as we can see, been in any manner injured, nor has any property been taken from him, nor have any of his rights been invaded such as would give him any standing in this court. * * *

The trial court also held that the so-called reliquidation of February 5, 1932, was a reliquidation, and that if the right to protest existed, the protest should have been filed within sixty days thereafter. The second re-reliquidation, as the court viewed it, was not "a reliquidation at all," and, therefore, the protest was untimely.

Finally, the trial court held that section 521 had no relation to drawback entries, but to consumption entries only.

The protest was thereupon dismissed and the appellant brought the case here for our consideration. The said rulings of the trial court are severally and properly assigned for error.

Sections 514 and 521 of the Tariff Act of 1922 are as follows:

SEC. 514. PROTEST.—All decisions of the collector, including the legality of all orders and findings entering into the same, as to the rate and amount of duties chargeable, and as to all exactions of whatever character (within the jurisdiction of the Secretary of the Treasury), and his decisions excluding any merchandise from entry or delivery, under any provision of the customs revenue laws, and his

liquidation of any entry, or refusal to pay any claim for drawback, or his refusal to reliquidate any entry for a clerical error discovered within one year after the date of entry, or within sixty days after liquidation when liquidation is made more than ten months after the date of entry, shall be final and conclusive upon all persons, unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation or decision, as well in cases of merchandise entered in bond as for consumption, file a protest in writing with the collector setting forth distinctly and specifically, and in respect to each entry, payment, claim, or decision, the reasons for the objection thereto, and if the merchandise is entered for consumption shall pay the full amount of duties, charges, and exactions ascertained to be due thereon. Under such rules as the Board of General Appraisers may prescribe, and in its discretion, a protest may be amended at any time prior to the first docket call thereof.

Sec. 521. Reliquidation of Duties.—Whenever any merchandise has been entered and passed free of duty, and whenever duties upon any imported merchandise have been liquidated and paid, and the merchandise has been delivered to the consignee, or his agent, such entry and passage free of duty and such settlement of duties shall, after the expiration of one year from the date of entry, or after the expiration of sixty days after the date of liquidation when liquidation is made more than ten months after the date of entry, in the absence of fraud and in the absence of protest by the consignee, or his agent, or by an American manufacturer, producer, or wholesaler, be final and conclusive upon all parties. If the collector finds probable cause to believe there is fraud in the case, he may reliquidate within two years after the date of entry, or after the date of liquidation when liquidation is made more than ten months after the date of entry.

The first point suggested for decision is whether the United States Customs Court and this court have jurisdiction over the subject matter of this litigation.

Section III, paragraph N, of the tariff act of October 3, 1913, provided:

That the decision of the collector as to the rate and amount of duties chargeable upon imported merchandise, or upon merchandise on which duty shall have been assessed, including all dutiable costs and charges, and as to all fees and exactions of whatever character (except duties on tonnage), shall be final and conclusive against all persons interested therein, unless the owner, importer, consignee, or agent of such merchandise, or the person paying such fees, charges, and exactions other than duties, shall, within thirty days after but not before such ascertainment and liquidation of duties, as well in cases of merchandise entered in bond as for consumption, or within fifteen days after the payment of such fees, charges, and exactions, if dissatisfied with such decision imposing a higher rate of duty, or a greater charge, fee, or exaction, than he shall claim to be legally payable, file a protest or protests in writing with the collector, setting forth therein distinctly and specifically, and in respect to each entry or payment, the reasons for his objections thereto, and if the merchandise is entered for consumption shall pay the full amount of the duties and charges ascertained to be due thereon. * * *

This section was changed materially by the Tariff Act of 1922, in which it appeared as section 514. By a comparison of the sections, it is found that there was inserted in said section 514 this language which is not found in said paragraph N. section III. "or refusal to

pay any claim for drawback" and "or filing such claim for drawback." There are other changes of a material nature, but it is with the words quoted that we are more particularly concerned here.

There is but little legislative history to aid in the construction of this language, if a reference to legislative history is called for. General Appraiser (now Judge) Sullivan, of the Board of General Appraisers (now United States Customs Court) appeared before the Ways and Means Committee and suggested the inclusion in the section of language sufficient to include proceedings for drawback. The House bill (section 527) included these provisions.

As we read and interpret said section 514, the section is ample authority for us to consider this case and to determine whether, as a condition precedent to the right to protest, the protestant must pay the money demanded, to the Government.

Without going into the question of whether the trial court had jurisdiction under any of the other provisions of said section 514, it is sufficient to decide that it did have jurisdiction to determine the questions here involved.

As we view the matter, there is but one remaining question requiring an answer, in order to dispose of this case, namely, was it a condition precedent to appellant's right of recovery that it pay to the collector the sum demanded as a result of his reliquidation of the drawback entries. If it did constitute such a condition precedent, it being admitted that such condition was not complied with, the appellant's protest must be dismissed, and the various questions arising under said section 521 become immaterial here.

The trial court said, *inter alia:*

We call attention to the condition precedent to the filing of protest as stated in section 514 of the tariff act, to wit, that the collector's action taken, whatever it may have been—

shall be final and conclusive upon all persons, unless the importer, consignee, or agent of the person paying such charge or exaction, or filing such claim for drawback, or seeking such entry or delivery, shall, within sixty days after, but not before such liquidation or decision, * * * file a protest in writing with the collector * * *.

The statute contemplates that the importer must have some substantial matter about which he may file a protest. If his merchandise is in bond at the time of liquidation and he is called upon to pay additional duties over those deposited, he must pay them before he can procure delivery. If they have been delivered under bond, then in order to put the Government in a position where it can be protected as well as to show that the importer has been put at a financial disadvantage, he must pay the amount of the duties, etc.

The importer is here in a case wherein he has not, so far as we can see, been in any manner injured, nor has any property been taken from him, nor have any of his rights been invaded such as would give him any standing in this court. We are not empowered, even if we felt justified, to admonish collectors nor to tell them to set aside any proceedings except as by the statute authorized. In the instant case the importer seeks a judgment of this court which shall declare some admin-

istrative action heretofore taken by the collector to be invalid, although such action has not as yet resulted in any legal disadvantage cognizable in this court. This court is not authorized to act in any such cause.

On the other hand, counsel for the appellant contend that the language of said section 514, "and if the merchandise is entered for consumption shall pay the full amount of duties, charges, and exactions ascertained to be due thereon," must be read to mean that in no other case of liquidation except in consumption entries is such prepayment required; in other words, that the rule *expressio unius est exclusio alterius* applies.

General provisions of the law allowing drawbacks on exported goods have been in force since the beginning of the Government. See section 4, tariff act of July 4, 1789. 1 Stat. 27. The full administration of such laws has been within the jurisdiction of the Secretary of the Treasury from that time until the passage of the Tariff Act of 1922, where, in section 514, a part of the administration of these provisions was made subject to judicial review. Long prior to the passage of the Tariff Act of 1922, successive tariff acts carried the language relied upon by appellant, "if the merchandise is entered for consumption shall pay the full amount of duties," etc. See section 14, tariff act of June 10, 1890. 26 Stat. 131, 137. It seems, therefore, that when such language was originally enacted, it was far from the congressional intent to make application of it to the payment of drawbacks—for that matter was entirely within the control of the Secretary of the Treasury. If it was not intended to be applied to sums due as drawbacks, to what then was it originally applicable? Doubtless such provisions were enacted to obviate the necessity of the payment of such duties where goods were entered for transportation or under bond for warehousing or other purposes. Such warehousing laws have, also, been on our books from very early dates. See section 3, tariff act of March 3, 1791.

We are of opinion that the rule of *expressio unius* invoked by appellant here is not applicable.

Upon what ground does the appellant base its case? It protests, but against what? It has paid nothing, it has incurred no obligations, it has not been actionably damaged. The defenses which the appellant has against the Government's demand for the payment of money, may be fully asserted if the Government sues the appellant in a district court of the United States. Having such a remedy, it is hard to discern wherein the appellant is damaged. If, on the other hand, the appellant desires to litigate the matter here by protest, which proceeding is, in effect, a suit against the United States, it must first meet the demands of the Government, pay the money claimed to be due, and then proceed by way of protest through the United States

Customs Court and this court to a judgment which ought to, and doubtless would, secure it all its legal rights.

Section 514 contemplates in cases of this character that the money shall be in the hands of the Government at the time the protest is filed.

Suitors in these matters must constantly have in mind that they sue the Government only by the Government's grace. We may summarize our views on this subject by quoting a portion of the opinion of Mr. Justice Lamar, in *United States* v. *Sherman & Sons Company*, 237 U. S. 146, 152:

1. This brief review of the many and detailed provisions of the statutes will suffice to show that the Government will not allow foreign goods to be brought into this country and then litigate with the importer as to the amount of duty. Neither bond, nor security, nor retention of the goods during litigation, will dispense with the necessity of payment. The duty, as assessed by the Collector, must be paid in any event, not only as a condition of the goods being entered, but also as a condition of the right to file a protest. When that has been done, Congress, in order to prevent injustice, has given the importer, who thus pays and protests, the right to bring the goods into the United States, has granted him the opportunity to review the finding of the Collector and has also given him the promise of a refund in case the Collector is found to have made an overcharge. (36 Stat. 103, subsection 23.) But this right of review is not an appeal in ordinary course of law and can be exercised only in the statutory method, on statutory conditions before special statutory tribunals of limited jurisdiction.

We are of opinion that it was a condition precedent to appellant's right to protest, that it pay the amount demanded by the collector as a result of his reliquidation of July 29, 1933. Not having done so, it had no standing in the trial court and has none here.

Other questions raised by counsel will be reserved for decision to some future period when their decision appears to be necessary.

Although we do not agree with all that is said in the decision of the United States Customs Court, its judgment dismissing the protest must be and is *affirmed.*