# United States Court of Appeals for the Federal Circuit

---

**INTERNATIONAL CUSTOM PRODUCTS, INC.,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee*

---

2014-1644

---

Appeal from the United States Court of International Trade in No. 1:08-cv-00189-GWC, Judge Gregory W. Carman.

---

Decided: June 30, 2015

---

GREGORY HUGH TEUFEL, OGC Law, LLC, Pittsburgh, PA, argued for plaintiff-appellant. Also represented by JEREMY L. SAMEK, Eckert, Seamans, Cherin, & Mellott LLC, Pittsburgh, PA.

REGINALD THOMAS BLADES, JR., Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOYCE R. BRANDA, JEANNE E. DAVIDSON, MARTIN M. TOMLINSON; EDWARD FRANCIS KENNY, AMY RUBIN, International Trade Field Office, New York, NY.

JOHN MICHAEL PETERSON, Neville Peterson LLP, New York, NY, for amicus curiae The American Association of Exporters and Importers. Also represented by RICHARD F. O'NEILL, RUSSELL ANDREW SEMMEL.

———————————

Before LOURIE, BRYSON, and CHEN, *Circuit Judges.*

LOURIE, *Circuit Judge.*

International Custom Products, Inc. ("ICP") appeals from the United States Court of International Trade ("the Trade Court") decisions (1) dismissing Counts 1–9 of ICP's complaint, *Int'l Custom Prods., Inc. v. United States*, 931 F. Supp. 2d 1338 (Ct. Int'l Trade 2013) ("*Decision I*"), and (2) denying ICP's motion to reconsider, alter, or amend the judgment and/or to amend the complaint, *Int'l Custom Prods., Inc. v. United States*, 991 F. Supp. 2d 1335 (Ct. Int'l Trade 2014) ("*Decision II*"). Because the Trade Court did not err, we affirm.

BACKGROUND

I

"It is a 'well-established principle that federal courts . . . are courts of limited jurisdiction marked out by Congress,'" *Norcal/Crosetti Foods, Inc. v. United States*, 963 F.2d 356, 358 (Fed. Cir. 1992) (quoting *Aldinger v. Howard*, 427 U.S. 1, 15 (1976)), and Congress has delineated the specific boundaries of the Trade Court's jurisdiction in 28 U.S.C. § 1581 (2000). Subsections (a)–(h) grant the Trade Court exclusive jurisdiction over specific actions. Subsection (i), on the other hand, offers a residual jurisdiction provision, which we have repeatedly held "may not be invoked when jurisdiction under another subsection of § 1581 is or could have been available, unless the remedy provided under that other subsection would be manifestly inadequate." *Miller & Co. v. United States*, 824 F.2d 961,

963 (Fed. Cir. 1987); *accord Am. Air Parcel Forwarding Co. v. United States*, 718 F.2d 1546, 1549 (Fed. Cir. 1983) ("[W]here a litigant has access to [the Trade Court] under traditional means, such as 28 U.S.C. § 1581(a), it must avail itself of this avenue of approach complying with all the relevant prerequisites thereto.").

To invoke the Trade Court's jurisdiction under subsection (a), an aggrieved importer must first file a protest under 19 U.S.C. § 1514, which the United States Customs and Border Protection ("Customs") then denies. 28 U.S.C. § 1581(a) (stating that the Trade Court "shall have exclusive jurisdiction of any civil action commenced to contest the denial of a protest" under 19 U.S.C. § 1515); 19 U.S.C. § 1515; *id.* § 1514(a) (identifying the decisions subject to a protest, such as "classification and rate" and "liquidation or reliquidation of an entry"). Once Customs denies that protest, the importer must then pay "all liquidated duties, charges, or exactions" owed before commencing suit in the Trade Court. 28 U.S.C. § 2637. ICP contests the constitutionality of that pre-payment requirement on appeal.

## II

This case has an extensive history, but we recount below only the facts most relevant to this appeal. ICP is an importer and distributor of products sold to processed food manufacturers, including the "white sauce" at issue here. In late 1998, ICP sought a tariff classification ruling from Customs for "white sauce" under the Harmonized Tariff Schedule of the United States ("HTSUS"). Consequently, Customs issued NYRL D86228 ("Ruling Letter"), classifying "white sauce" under HTSUS 2103.90.9060 (1999) as "sauces and preparations therefor."

In 2004, Customs notified ICP that it was initiating a new investigation into the classification of "white sauce." Based on the results of that investigation, Customs issued a Notice of Action ("2005 Notice"), without providing the requisite notice and comment, reclassifying "white sauce"

under HTSUS 0405.20.3000 (2005) as "[d]airy spreads." Customs informed ICP that the reclassification would impact all pending and future entries of "white sauce." Ultimately, the reclassification effected a tariff increase of almost 2400%, and several waves of litigation followed.

The first began in 2005 after Customs liquidated sixty of ICP's then-pending entries under the 2005 Notice. ICP did not protest the liquidation of those sixty entries as is required to establish jurisdiction under § 1581(a), but it nonetheless filed a complaint in the Trade Court challenging the validity of the 2005 Notice. That court exercised its residual jurisdiction under § 1581(i), finding that § 1581(a) proved "manifestly inadequate" because its requisite protest procedure would put ICP, a company on the "brink of bankruptcy," out of business. *Int'l Custom Prods., Inc. v. United States*, 374 F. Supp. 2d 1311, 1321–22 (Ct. Int'l Trade 2005). It then found the 2005 Notice void because Customs did not comply with the notice and comment procedures of 19 U.S.C. § 1625(c). *Id.* at 1326.

On appeal, we reversed and vacated, instead holding that the Trade Court lacked jurisdiction under § 1581(i). *Int'l Custom Prods., Inc. v. United States*, 467 F.3d 1324 (Fed. Cir. 2006) ("*ICP I*"). We reasoned that § 1581(a) was not "manifestly inadequate" because "mere allegations of financial harm . . . do not make the remedy established by Congress manifestly inadequate," and thus ICP could not try to "circumvent the prerequisites of 1581(a) by invoking jurisdiction under 1581(i)." *Id.* at 1327. ICP had to protest the liquidation and then pay the duty owed before it could commence such a lawsuit in the Trade Court.

Another wave began in 2007 after Customs liquidated several additional "white sauce" entries at the duty rate prescribed in the 2005 Notice. Customs first liquidated eleven entries ICP made into its warehouse in 2005. ICP protested the liquidation of one of those entries, and that protest was deemed denied thirty days later pursuant to

19 U.S.C. § 1515(b).  ICP paid the duty owed on that entry and commenced suit in the Trade Court under § 1581(a).  Customs then liquidated eighty-four similar entries made between 2003 and 2005.  ICP protested those liquidations, but Customs voluntarily suspended those protests pending the outcome of ICP's suit.

Before the Trade Court, ICP argued that Customs' failure to comply with the notice and comment procedures of 19 U.S.C. § 1625(c) rendered the 2005 Notice void.  The Trade Court agreed, and ordered Customs to reliquidate the entry pursuant to the Ruling Letter.  *See Int'l Custom Prods., Inc. v. United States*, 878 F. Supp. 2d 1329, 1350 (Ct. Int'l Trade 2012).  On the government's appeal, we affirmed.  *Int'l Custom Prods., Inc. v. United States*, 748 F.3d 1182, 1189 (Fed. Cir. 2014) ("*ICP IV*").  We held that the 2005 Notice was an interpretive ruling that effectively revoked the Ruling Letter, and was thus subject to the strict requirements set forth in 19 U.S.C. § 1625(c).  *Id.* at 1186. Customs' failure to abide by those requirements rendered the 2005 Notice void.  *Id.* at 1189.  In light of our holding, the entry in *ICP IV* and the entries subject to the suspended protests are being reliquidated pursuant to the Ruling Letter.

### III

In 2007, Customs also liquidated thirteen entries from between October 2003 and October 2004 under the 2005 Notice.  ICP protested the liquidation of those entries in a single protest, which Customs denied.  ICP then asked Customs for relief under 19 U.S.C. § 1520(c), but Customs denied that request as "beyond the scope of the authority provided by the statute."  Joint Appendix 45 ¶ 19.  ICP did not ask Customs, however, to voluntarily reliquidate those entries under 19 U.S.C. § 1501.  Nor did it timely seek administrative review of the protest denial as "contrary to proper instructions" under 19 U.S.C. § 1515(d).  As a result, Customs' denial became final.  Because of its

administratively final status, that protest could not be suspended pending our resolution of *ICP IV*. Thus, unlike the entries subject to the suspended protests discussed *supra*, the thirteen entries from between October 2003 and October 2004 are not being reliquidated; they are instead at issue here.

In 2008, ICP commenced this suit in the Trade Court. Because liquidation of the thirteen entries under the 2005 Notice imposed a duty liability of roughly $28 million, and ICP remained on the "brink of bankruptcy," ICP filed its complaint in the Trade Court without first paying the $28 million owed. In Counts 1–8, ICP alleged, *inter alia*, that Customs effectively revoked the Ruling Letter without first complying with the notice and comment requirements set forth in 19 U.S.C. § 1625(c); violated its own regulation when it classified the entries as a dairy spread, rather than as a sauce preparation; and violated the Administrative Procedure Act and due process when it revoked the Ruling Letter. In Count 9, ICP alleged that the pre-payment requirement of 28 U.S.C. § 2637(a) is unconstitutional as applied to ICP.

The Trade Court first dismissed Counts 1–8 pursuant to USCIT Rule 12(b)(1) for lack of subject matter jurisdiction. *Decision I*, 931 F. Supp. 2d at 1341. It noted that the pre-payment requirement of 28 U.S.C. § 2637(a) is "a condition upon the waiver of sovereign immunity" that "must be strictly construed in favor of the government." *Id*. The court thus reasoned that ICP's failure to pay the duties owed foreclosed any attempt to invoke jurisdiction under § 1581(a). *Id*. at 1342. The court then held that it also lacked jurisdiction under § 1581(i), noting that "[ICP] may not do indirectly what it is prohibited to do directly." *Id*. (citing *American Air Parcel* and *ICP I* for the proposition that ICP could not invoke § 1581(i) because § 1581(a) remained available and was not manifestly inadequate).

The Trade Court next found that it had jurisdiction over Count 9 under § 1581(i) because Count 9 questioned the constitutionality of 28 U.S.C. § 2637(a), "a provision over which Customs has no authority or discretion," and "advance[d] a claim against the United States arising out of a [federal law] providing for revenue from imports . . . ." *Id.* at 1343. But the court nevertheless dismissed Count 9 pursuant to USCIT Rule 12(b)(5) for failure to state a claim upon which relief can be granted. *Id.* at 1345. In so doing, the court noted that the pre-payment requirement "has been a fixture of the customs laws" since 1845, *id.* at 1343, and "has consistently been upheld as a valid condition attached to the government's waiver of sovereign immunity" in § 1581(a), *id.* at 1344. The court recognized that the pre-payment requirement "seem[ed] both harsh and unfair" when applied here, *id.*, yet stated that such unfairness did not present a constitutional defect.

ICP timely moved to reconsider, alter, or amend the judgment, or, in the alternative, to amend the complaint, *Decision II*, 991 F. Supp. 2d at 1336, and the Trade Court denied that motion, *id.* at 1339. The court reasoned that reconsidering the judgment would be improper because ICP only "reiterate[d] arguments already made in its brief opposing the motion to dismiss and fully considered at that time." *Id.* at 1337. The court empathized with ICP's situation, *id.* at 1338 ("[ICP] is unable to obtain relief because it cannot prepay the *very duties that the courts have declared invalid.*") (emphasis in original), but again noted that the pre-payment requirement places a permissible condition on the government's waiver of sovereign immunity, *id.* The court further reasoned that allowing amendment "here would be futile and unduly delay resolution of this case." *Id.* at 1339.

ICP timely appealed to this court; we have jurisdiction pursuant to 28 U.S.C. § 1295(a)(5).

DISCUSSION

I

The constitutionality of 28 U.S.C. § 2637(a), *i.e.*, the pre-payment requirement, permeates every aspect of this appeal; we therefore address the issue at the outset. In so doing, we start with the Trade Court's dismissal of Count 9 for failure to state a claim upon which relief can be granted. *See Decision I*, 457 F.3d at 1345.

We review de novo the Trade Court's dismissal for failure to state a claim. *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1049 (Fed. Cir. 2012). "Dismissal for failure to state a claim is proper only when it is beyond doubt that the plaintiff can prove no set of facts that would entitle it to relief." *Amoco Oil Co. v. United States*, 234 F.3d 1374, 1376 (Fed. Cir. 2000). We also review de novo any issues of constitutional interpretation. *Ashley Furniture Indus., Inc. v. United States*, 734 F.3d 1306, 1309 (Fed. Cir. 2013) (quoting *U.S. Shoe Corp. v. United States*, 196 F.3d 1378, 1381 (Fed. Cir. 2002)).

ICP argues that we should reinstate Count 9 because the pre-payment requirement, as applied to ICP, deprives ICP of its property without due process of law by creating "an insurmountable financial barrier to judicial review." Appellant's Br. 20. Requiring pre-payment of duties owed undoubtedly burdens an importer, and we appreciate the harsh reality that requirement imposes here, as ICP must pay almost $28 million before it can commence suit in the Trade Court. But we nonetheless hold that the pre-payment requirement does not deny ICP the fundamental processes of fairness required by the Fifth Amendment.

A

The pre-payment requirement at issue simply conditions the government's waiver of sovereign immunity in suits over the denial of a protest. It is "elementary" that "[t]he United States, as sovereign, is immune from suit

save as it consents to be sued." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). In the event the government consents to suit, that waiver "cannot be implied but must be unequivocally expressed." *Id.* (citation omitted). In the trade context, the government "unequivocally" consented to suit for certain actions, such as when an importer contests the denial of a protest. *Humane Soc. of United States v. Clinton*, 236 F.3d 1320, 1328 (Fed. Cir. 2001) ("[We] conclude that § 1581 not only states the jurisdictional grant to the [Trade Court], but also provides a waiver of sovereign immunity over the specified classes of cases."); *see* 28 U.S.C. § 1581 (entitled "[c]ivil actions against the United States"); *id.* § 1581(a).

Yet, even when the government waives its immunity, a plaintiff lacks carte blanche to file suit. Any waiver is subject to "the terms and conditions under which [the government] consents to be sued," *NEC Corp. v. United States*, 806 F.2d 247, 248 (Fed. Cir. 1986), and "must be strictly observed," *Lehman v. Nakshian*, 453 U.S. 156, 161 (1981) (citing *Soriano v. United States*, 352 U.S. 270, 276 (1957)). Courts have repeatedly recognized, for example, a statute of limitations as such a valid condition. *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983) ("When waiver legislation contains a statute of limitations, the limitations provision constitutes a condition on the waiver of sovereign immunity."); *see also Hart v. United States*, 910 F.2d 815, 817 (Fed. Cir. 1990) ("The statute of limitations is an express limit[] on the Tucker Act's waiver of sovereign immunity."). Any claim brought outside the limitations period is accordingly barred.

The Supreme Court has also held that pre-payment of monies owed similarly conditions the government's waiver of immunity. In *Cheatham v. United States*, the Court reiterated that "the government has the right to prescribe the conditions on which it will subject itself to the judgment of the courts." 92 U.S. 85, 89 (1875). It then noted

that "the general government has wisely made the payment of the tax claimed, whether of customs or of internal revenue, a condition precedent to a resort to the courts . . . . We regard this as a condition on which alone the government consents to litigate." *Id.* The Court has yet to question the validity of such a condition. *United States v. Clintwood Elkhorn Mining Co.*, 553 U.S. 1, 11 (2008) (noting that a taxpayer must pay her taxes before initiating a refund action, and "see[ing] no constitutional problem at all" with that requirement); *Flora v. United States*, 362 U.S. 145, 177 (1960) (stating that the tax scheme "requires full payment . . . before an income tax refund suit can be maintained"). We find no differently here.

As in the tax context, the pre-payment requirement here has been "a fixture of the customs laws" since the founding of the republic. *Decision I*, 931 F. Supp. 2d at 1343. The first tariff statutes lacked any mechanism for importers to directly challenge a duty rate. *See, e.g.*, Act of July 4, 1789, ch. 2, 1 Stat. 24; Act of July 31, 1789, ch. 5, 1 Stat. 29. Thus, an importer wanting to challenge a rate had to pay the duty and then sue the customs collector for a refund in a common law court. *United States v. Cherry Hill Textiles, Inc.*, 112 F.3d 1550, 1552 (Fed. Cir. 1997) (recounting the genesis of the pre-payment requirement). That pre-payment requirement was subsequently codified in 1845, and now resides in 28 U.S.C. § 2637(a): "A civil action contesting the denial of a protest . . . may be commenced in the Court of International Trade only if all liquidated duties, charges, or exactions have been paid at the time the action is commenced." It undoubtedly conditions the government's consent to suit:

> If . . . the appellant desires to litigate the matter here by protest . . . *it must first meet the demands of the Government, pay the money claimed to be due*, and then proceed by way of protest . . . . Section 514 contemplates in cases of this character that the money shall be in the hands of the Gov-

ernment at the time the protest is filed. Suitors in these matters must constantly have in mind that *they sue the Government only by the Government's grace.*

*Champion Coated Paper Co. v. United States*, 24 CCPA 83, 89–90 (1936) (emphases added). Absent any genuine authority contesting the validity of such a condition, we decline the invitation to disturb the otherwise well-settled understanding that the government may condition its involvement in a litigation on the pre-payment of, in this case, duties owed.

## B

We further conclude that ICP cannot allege a genuine due process claim, for it lacks a constitutionally protected property interest. "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999).

ICP contends that it has a property interest "in having Customs classify its entries of white sauce under the sauces heading." Appellant's Br. 22. We disagree.

The Constitution's "procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972). Those benefits "may take many forms," *id.*, and are not simply limited to "real estate, chattels, or money," *id.* at 572. But for a benefit to warrant the procedural protections of due process, "a person clearly must have more than an abstract need or desire for it. . . . He must, instead, have a legitimate claim of entitlement to it." *Id.* at 577. For that reason, welfare benefits, *Goldberg v. Kelley*, 397 U.S. 254 (1970), and the right to continued receipt of Social Security disability benefits, *Mathews v. Eldrige*, 424 U.S. 319 (1976), are constitutionally protected property interests.

In contrast, ICP does not have a "legitimate claim of entitlement" to a specific classification and its associated duty rate, much less the maintenance of that duty rate. As we noted, "the Constitution does not provide a right to import merchandise under a particular classification or rate of duty," *A Classic Time v. United States*, 123 F.3d 1475, 1476 (Fed. Cir. 1997), or even afford "a protectable interest to engage in international trade," *Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1250 (Fed. Cir. 1985); *accord NEC Corp. v. United States*, 151 F.3d 1361, 1369 (Fed. Cir. 1998) ("[E]ngaging in foreign commerce is not a fundamental right protected by notions of substantive due process."). Nor does the Constitution recognize a right to rely on the maintenance of a duty rate. *Norwegian Nitrogen Prods. Co. v. United States*, 288 U.S. 294, 318 (1933) ("No one has a legal right to the maintenance of an existing rate or duty."); *GPX Int'l Tire Corp. v. United States*, 780 F.3d 1136, 1144 (Fed. Cir. 2015) (same); *Gilda Indus., Inc. v. United States*, 446 F.3d 1271, 1284 (Fed. Cir. 2006) ("[E]xecutive actions involving foreign trade, such as the imposition of tariffs, do not constitute the taking of property without due process of law."). Absent a right to a duty rate and its sustained existence, ICP cannot contest the adequacy of the process provided, which here includes the pre-payment requirement.

Moreover, to the extent process is due, Congress has delineated a notice and comment regime that Customs must follow in order to alter or revoke a ruling letter. When Customs fails to abide by that process, an importer has access to judicial review. The statutory pre-payment requirement does not completely foreclose such access, even for a financially struggling importer. An importer can pay the duties on a single entry and request that liquidation of the remaining entries be suspended, if it does so on a timely basis. *See, e.g.*, *ICP IV*, 748 F.3d 1182. Moreover, in circumstances such as this, additional pro-

tections exist. *See* 19 U.S.C. § 1515(d). The statutory scheme and pre-payment requirement are not unconstitutional simply because ICP failed to timely avail itself of the provided procedures.

Because the pre-payment requirement is a valid condition attached to the government's waiver of immunity, and because ICP lacks a constitutionally protected property interest, the Trade Court correctly dismissed Count 9 for failure to state a claim.

## II

We similarly review de novo the Trade Court's dismissal for lack of subject matter jurisdiction. *Heartland By-Prods., Inc. v. United States*, 424 F.3d 1244, 1250 (Fed. Cir. 2005).

ICP has twice before argued that the Trade Court had jurisdiction to hear its claims under § 1581(i), *ICP I*, 467 F.3d 1324; *Int'l Custom Prods. v. United States*, 214 F. App'x 993 (Fed. Cir. 2007), and we have twice rejected its arguments. In *ICP I*, we reiterated that "mere allegations of financial harm . . . do not make the remedy established by Congress manifestly inadequate," and thus ICP had to proceed via § 1581(a). *ICP I*, 467 F.3d at 1327. ICP now suggests that § 1581(a) cannot confer jurisdiction *at all* because the protest procedures of 19 U.S.C. § 1514 do not apply to a claim "centered on the patent *ultra vires* nature of Customs' actions." Appellant's Br. 37. We yet again find ICP's attempt to circumvent § 1581(a) unpersuasive.

"[W]here Congress has prescribed in great detail a particular track for a claimant to follow, in administrative or judicial proceedings, and particularly where the claim is against the United States . . . , the remedy will be . . . exclusive." *Nat'l Corn Growers Ass'n v. Baker*, 840 F.2d 1547, 1558 (Fed. Cir. 1988). Here, Congress "prescribed in great detail a particular track for a claimant" to challenge a classification decision or duty assessment:

> [A]ny clerical error, mistake of fact, or other inad-
> vertence, . . . adverse to the importer, in any en-
> try, liquidation, or reliquidation, and, decision of
> the Customs Service, *including the legality of all
> orders and findings entering into the same*, as to . .
> . (2) the classification and rate and amount of du-
> ties chargeable; . . . [and] (5) the liquidation or re-
> liquidation of an entry . . .   shall be final and
> conclusive . . . unless a protest is filed . . . .

19 U.S.C. § 1514(a) (emphasis added).  That is an express
statement requiring an importer to challenge the legality
of Customs' classification or liquidation decisions via the
protest procedures in §§ 1514 and 1515.  *See Omni U.S.A.,
Inc. v. United States*, 840 F.2d 912, 915 (Fed. Cir. 1988)
(noting the perceived "pervasive requirement throughout
the statute to channel all nonexcepted protests through
§ 1514 even when those protests go to the legality of a
custom official's action").  And the Trade Court has juris-
diction over such a challenge exclusively via § 1581(a).  *Id.*
(refusing to grant jurisdiction under § 1581(i) for the "void
liquidation" challenge simply because the importer failed
to comply with the requirements of the proper jurisdiction
provision).

   ICP's self-proclaimed "*ultra vires*" claim, which simply
questions "the legality of all orders and findings entering
into the same," is just such a challenge.  ICP must thus
proceed via the protest procedures of §§ 1514 and 1515,
and thus must also comply with the jurisdictional prereq-
uisites of § 1581(a) to pursue a suit in the Trade Court.
To allow ICP to ignore the heart of its claim and assign an
arbitrary classification to it would exacerbate our earlier
noted concern that "[b]y artful pleading alone a litigant
would be able to change the entire statutory scheme
Congress has established."  *Am. Air Parcel*, 718 F.2d at
1550.  Congress "prescribed in great detail" a mechanism
by which importers challenge classification and liquida-
tion decisions.  ICP cannot now ignore that scheme.

Section 1581(a) thus remains the proper vehicle for ICP to challenge the legality of the 2005 Notice in the Trade Court. Yet, as the Trade Court held, ICP's failure to pay the duties owed foreclosed any attempt to enter the Trade Court under § 1581(a). ICP cannot now reclassify its claim to excuse itself from § 1581(a)'s associated pre-payment requirement. *See Decision I*, 931 F. Supp. 2d at 1342 ("[ICP] may not do indirectly what it is prohibited to do directly."). The Trade Court therefore correctly dismissed Counts 1–8 for lack of jurisdiction.

## III

We review the dismissal of a motion to amend and the dismissal of a motion for reconsideration for an abuse of discretion. *Renda Marine, Inc. v. United States*, 509 F.3d 1372, 1380 (Fed. Cir. 2007) (motion for reconsideration); *Saarstahl AG v. United States*, 177 F.3d 1314, 1320 (Fed. Cir. 1999) (motion to amend).

ICP argues that the Trade Court abused its discretion by denying ICP an opportunity to amend its complaint to incorporate a "deemed liquidated jurisdictional basis for its claims." Reply Br. 12. According to ICP, an importer need not file a protest, and thus need not comply with the earlier described protest procedures, when it challenges an entry "Customs purported to liquidate . . . after it had already been liquidated by operation of law." Appellant's Br. 29. Moreover, ICP contends that any purported delay in raising a deemed liquidated argument did not prejudice the government, and that allowing amendment to incorporate such an argument would not have been futile.

We disagree. As the government contends, the Trade Court did not abuse its discretion in denying ICP's motion for reconsideration and/or to amend. With respect to the motion for reconsideration, the Trade Court did not abuse its discretion by rejecting an "attempt[] to re-litigate the case." *Decision II*, 991 F. Supp. 2d at 1338. Reconsideration is granted in limited circumstances, and as the court

noted, ICP failed to satisfy those circumstances. No meaningful argument disputing that has been raised now on appeal.

With respect to the motion to amend, the Trade Court did not abuse its discretion by noting that accepting ICP's deemed liquidated argument would "be futile and unduly delay resolution of this case." *Id.* at 1339. As the government notes, ICP waited five years to raise its deemed liquidated argument, only first raising the argument after the Trade Court dismissed the case. It was not an abuse of discretion for the court to find that hearing such an argument would unduly delay resolution of the case. *See Ultimax Cement Mfg. Corp. v. CTS Cement Mfg. Corp.*, 587 F.3d 1339, 1354 (Fed. Cir. 2009) (holding that "the district court was clearly within its discretion to deny the motion to amend based on undue delay and a similarly burdensome need to reopen summary judgment motions").

Moreover, the Trade Court did not abuse its discretion in finding the deemed liquidated argument futile here. As we have held, an importer may use a deemed liquidated claim as a shield in an enforcement action. *Cherry Hill*, 112 F.3d at 1560. An importer can thus defend against a purported untimely liquidation in an enforcement action without first having to protest. *Id.* at 1561 ("We therefore hold that because Cherry Hill's entry was liquidated by operation of law . . . , IC&S was not required to protest the October 28 liquidation in order to . . . defend against liability on the ground of the deemed liquidation."). Such a claim, however, cannot be further used "as a sword" in an action against the government simply to avoid protest procedures. *Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1375–76 (Fed. Cir. 2002). ICP's claim against the government did not present the proper posture for raising a deemed liquidated claim, and it was therefore not an abuse of discretion for the Trade Court to dismiss the requested amendment to include that argument here.

We therefore hold that the Trade Court correctly denied ICP's motion for reconsideration and/or to amend the complaint. We have considered all remaining arguments, but find them unpersuasive.

## CONCLUSION

For the foregoing reasons, the decisions of the Trade Court (1) dismissing Counts 1–9 of ICP's complaint and (2) denying ICP's motion to reconsider, alter, or amend the judgment and/or to amend the complaint are affirmed.

**AFFIRMED**